UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| MELISSA BARRETT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 11-145-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| CUMBERLAND VALLEY DISTRICT | ) | **MEMORANDUM OPINION** |
| HEALTH DEPARTMENT and | ) | **&** |
| KATHY FIELDS, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This case arises out of Melissa Barrett's termination from employment with the defendant, Cumberland Valley District Health Department ("CVDHD"), a state entity. Specifically, Barrett alleges that she was terminated as a result of engaging in constitutionally protected speech in violation of 42 U.S.C. § 1983. She also asserts a state outrage claim. The parties have filed cross motions for summary judgment on the issue of whether the relevant speech was, indeed, protected under the Constitution. For the reasons stated herein, and because the Court finds Barrett's speech to be outside the realm of that which is protected by the First Amendment, the Court will grant Defendants' motion for summary judgment with respect to the § 1983 claim.

**I.**

CVDHD was formed, pursuant to Kentucky statute, by various counties in eastern Kentucky to provide medical services to the people of those counties. It is a state agency. Melissa Barrett worked for CVDHD as the Director of Nursing for a division of the agency

known as the Home Health Agency ("Home Health"). In April 2009, Barrett was informed by her supervisor Brian Miniard, the Executive Director, that he was actively negotiating the potential sale of Home Health to a private company, Lifeline. Barrett's actions in the following weeks ultimately led to her dismissal.

On May 7, the Board of CVDHD gathered for a meeting; it was expected that Miniard would present the details of the proposed sale to the Board. Before he was able to do so, however, the Board went into a closed executive session. At the conclusion of that session, Miniard was terminated for unknown reasons. Further, the potential sale was never discussed on the record. Following Miniard's dismissal, his position was left vacant for a brief period and Barrett was advised that the new Director would evaluate any potential sale of Home Health.

Within a few days and without orders to do so, Barrett began meeting with her subordinates to discuss the potential sale. She characterized the content of these meetings as addressing rumors and advising her subordinates that if they had thoughts about the advantages and disadvantages of the sale, they could come to her and she would pass those thoughts along to the Board. [R. 43-9 at 11-15]. She also attempted to address concerns as to how a possible sale would impact their jobs and informed employees that, according to Lifeline, a sale would not impact their jobs in any way other than the loss of state pension plans. According to Barrett, the main, if not entire, focus of these meetings was to address employee concerns as to how a possible sale would impact their jobs. Those that she met with construed the purpose of the meetings as an attempt to gather support for the sale during the power vacuum at the Director position. Apparently displeased, many employees submitted grievances concerning Barrett's speech and perceived role in the negotiations.

On May 14, Kathy Fields, a defendant in this action, was named the interim Director of

CVDHD. Dissatisfied with Barrett, Fields place her on administrative leave within days of her appointment. In September, Fields and CVDHD notified Barrett of her termination. In the letter providing grounds for dismissal, CVDHD cited Barrett's speech to employees during the uncertainty prior to Field's appointment and after the board meeting where Miniard was fired. Specifically, the letter states that Barrett "falsely alleg[ed] to employees under [her] supervision that the District's Home Health Service would or could be sold to another agency thereby resulting in a loss of retirement benefits to the current employees." [R. 43 at 4]. Further, the letter states that dismissal was necessary because Barrett "pressured . . . employees to 'vote' to leave CVDHD in an apparent effort to force a sale of the service, thereby creating a crisis in morale for the employees resulting in . . . grievances filed against [Barrett] by employees of the District." [*Id*.].

Barrett sought relief from CVDHD's decision through Kentucky's administrative process. The Hearing Officer considered whether Barrett's dismissal was appropriate under the relevant Kentucky regulations and found that it was; Barrett's actions constituted "both lack of good behavior and unsatisfactory performance of a job duty." [R. 84-1 at 15] (relying on 902 KAR 8:110). Importantly, the Hearing Officer did not consider whether Barrett ever engaged in constitutionally protected speech. Instead, Barrett sought redress under 42 U.S.C. §1983 in this Court relying on such a theory.

## II.

CVDHD and Fields seek summary judgment under Federal Rule of Procedure 56. Pursuant to Rule 56(c), summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D.Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding,* 285 F.3d 415, 424 (6th. Cir. 2002). Moreover, the movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue. *Holding Hall*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Holding Hall*, 285 F.3d at 424 (internal citations omitted).

Finally, the trial court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact" and "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). In reviewing a motion for summary judgment, the court "must construe the evidence and draw all

reasonable inferences in favor of the nonmoving party." *Browning v. Dept. of Army*, 436 F.3d 692, 695 (6th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 495 U.S. 574, 587 (1986)).

### III.

#### A.

As an initial matter, the Court must address an argument raised by the defendants that this Court is collaterally estopped from considering the merits of Barrett's claim because of the prior Kentucky administrative proceedings. The defendants argue that the focus of this case, the constitutional status of Barrett's speech, was adjudicated in the administrative proceedings because "the entire rationale for her termination was the content and nature of, as well as the motivation for [Barrett's] speech." [R. 72-1 at 3]. Because the Hearing Officer considered the lawfulness of the termination under Kentucky law, and the termination resulted from Barrett's speech, CVDHD argues, this Court is precluded from considering any challenge to Barrett's termination relying on protected speech bases. This argument is wholly without merit.

While it is true that certain state administrative findings and rulings can sometimes have a preclusive effect on later proceedings in federal court, one of the necessary predicates to such a result is that "the issues litigated by the [agency] are the same issues sought to be litigated in the federal action." *Nelson v. Jefferson County, Ky.*, 863 F.2d 18, 19 (6th Cir. 1988). Here, the state agency Hearing Officer never considered the constitutional status of Barrett's speech. Instead, he examined only whether any of the regulatory "for cause" justifications existed for Barrett's termination. [R. 84-1 at 13-15]. While he ultimately concluded that they did in that Barrett was rightfully subject to discipline because of lack of good behavior and failure to satisfactorily complete a job duty, [R. 84-1 at 15], he never considered whether Barrett's speech was entitled

5

to constitutional protection, the issue in this case. Therefore, collateral estoppel does not apply in this setting.

### B.

In order to succeed on her retaliatory discharge claim based on violations of the First Amendment, Barrett must satisfy three elements. First, she must prove that her speech was protected under the Constitution. Second, she must demonstrate that she suffered an adverse employment action. Third, she is required to prove causation: the adverse action must have been motivated, at least partially, by the exercise of protected speech. *Nair v. Oakland Cnty. Cmty. Health Auth.*, 443 F.3d 469, 477-78 (6th Cir. 2006) (citation omitted). At issue now is whether Barrett's communications to her fellow CVDHD employees are protected under the First Amendment. In the Sixth Circuit, the status of a public employee's speech is a question of law, appropriate for the Court to consider at this time. *Fox v. Traverse City Area Pub. Schs. Bd. of Educ.*, 605 F.3d 345, 350-51 (6th Cir. 2010) ("[W]e have consistently described the question of whether, in a First Amendment retaliation action, a public employee's speech is protected as one of law, not one of both fact and law.") (citing *Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007)).

In order for public employee speech to be protected under the First Amendment, three requirements must be met. First, the employee must have spoken as a private citizen rather than as an employee; one speaks as an employee when one "make[s] statements pursuant to [one's] official duties." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Thus, if an individual speaks outside the requirements of his official duties, he speaks as a private citizen whose speech remains eligible for constitutional protection. Second, the speech at issue must address a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 146 (1983) ("When employee expression

6

cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices."). Third, the interest of the employee in speaking must outweigh "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Franklin v. McPherson*, 483 U.S. 378, 388 (1987) (citing *Pickering v. Brd. of Educ.*, 391 U.S. 563, 568 (1968)). Thus, a public employee's speech is protected only if he speaks as a citizen on a matter of public concern in a situation where his interest in the speech outweighs the interest of the State.

Here, the Court need not consider whether Barrett spoke as a citizen or whether her interest in the speech outweighed CVDHD's interest because Barrett plainly fails the public concern requirement. A matter is one of public concern when it "relat[es] to any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147-48.

Barrett argues that because she worked for a public health organization, her speech relating to the administration of healthcare is a public concern. She argues that "the quality of patient care in state medical organizations presents an issue of public concern." [R. 75-1 at 5]. While this broad proposition may be true, Barrett goes too far in tying her speech to the "quality of patient care" in the region. Barrett did not speak about the impact a potential sale would have on the quality of availability of healthcare. Her focus was much narrower. When determining whether a subject addresses a matter of public concern, the Court should examine the "focus" of the speech and in so doing analyze "the point of the speech in question; to what purpose the employee spoke; the intent of the speech; or the communicative purpose of the speaker." *Farhat*

7

*v. Jopke*, 370 F.3d 580, 592 (6th Cir. 2004) (citations omitted). When examining the focus of the relevant speech at issue here, it is plain that only an internal non-public issue was implicated. Barrett conducted the meeting with fellow employees to discuss the impact a potential sale would have on those employees' jobs; an entirely internal and private concern.

  This conclusion is supported by the record and the fully credited testimony of Barrett herself. When testifying as to why she conducted the meetings, Barrett stated that she was seeking to be "up front" because Home Health recently "had two layoffs." [R. 43-9 at 12]. When describing both her fears and those of her employees due to the uncertainty of whether a sale would occur or not, Barrett testified that she was not in favor of the sale but sought to address the issue with her subordinates because it seemed to her that "if you don't take this, you're going to lose your agency and none of you will have a job." [*Id*.]. Barrett testified that, when speaking with her subordinates, she "encouraged them to inform staff of what the [Lifeline] group had told [her] as far as their jobs would be safe, everything would pretty much stay the same . . . except for retirement." [*Id*.].

  Barrett also testified that during the meetings she informed employees of Miniard's termination and that she wanted feedback as to whether the employees' were in favor of a sale to Lifeline or not. [R. 43-9 at 13-15]. According to Barrett, the focus of the meetings was to address jobs, specifically, how the sale would impact those employees' jobs and whether they, as a group, thought the sale was a good idea. Indeed, the Court reviewed Barrett's testimony in its entirety and at no point does she testify that she spoke at the meetings about the potential effect of the sale on the quality or availability of healthcare in the region.

  Barrett cites the testimony of multiple other employees and their concern for losing their retirement benefits before concluding that "[t]hese concerns are much more than just internal

policy issues." [R. 75-1 at 6]. The Court disagrees. Employee benefits and the viability of a specific individual's continued employment are the exact type of personal interests and internal matters the Supreme Court rejected as entitling speech to constitutional protection. *See Connick*, 461 U.S. at 148 (finding an internal questionnaire concerning office morale and the need for an internal grievance committee within a public entity to be matters of private concern).

In attempting to tie the potential loss of employee benefits and the loss of employee morale within a public agency to the public interest, Barrett seeks to broaden the acceptable bounds of those subjects which truly are of public interest. "A public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run." *Boyce v. Andrew*, 510 F.3d 1333, 1344 (11th Cir. 2007) (internal quotation omitted). Further, Barrett's speech occurred entirely internally. While this fact alone does not preclude a finding of public concern, *Givhan v. Western Consolidated School Dist.*, 439 U.S. 410, 414 (1979), it is an acceptable fact to consider in determining whether the subject matter concerned the public. *Westmoreland v. Sutherland*, 662 F.3d 714, 720 (6th Cir. 2011) (considering the forum of speech as a relevant concern when determining whether it is of only a private interest); *Buazard v. Meridith*, 172 F.3d 546, 549 (8th Cir. 1999).

Thus, the Court must conclude that the subject of Barrett's speech was a matter of private internal interest only. There was no political or larger social interest in whether employees within Home Health lost retirement benefits or if their working conditions changed. As a result, the defendants were free to terminate Barrett relying on those statements as they saw fit without incurring liability under 42 U.S.C. § 1983. *See Connick*, 461 U.S. at 146 ("Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not

subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable.").

## C.

In addition to the federal § 1983 claim discussed above, Barrett also brought a supplemental state law outrage claim. [R. 1]. When, as here, the Court dismisses the claim upon which federal jurisdiction is based, the Court may decline to exercise jurisdiction over any remaining state law claims. 28 U.S.C. § 1367(c)(3) provides, in relevant part, that "district courts may decline to exercise supplemental jurisdiction over a [supplemental state law] claim if the district court has dismissed all claims over which it has original jurisdiction." The key word in the statutory text, of course, is the word "may." Thus, it is clear that the Court has discretion in choosing whether to exercise jurisdiction over the supplemental claim.

The Sixth Circuit has provided guidance on how district courts should exercise that discretion. "[G]enerally, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well. A district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion General Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (internal quotations and citations omitted).

Indeed, "courts have minimal discretion to decide pendant state law claims on the merits once the basis for federal jurisdiction is dismissed before trial." *Province v. Cleveland Press Pub. Co.*, 787 F.2d 1047, 1055, (6th Cir. 1986). It is only when there are "overwhelming interests in judicial economy" that it would be proper for a district court to exercise its discretion and retain jurisdiction over the supplemental claims. *See id.* ("[I]n certain cases, the overwhelming interests in judicial economy may still allow a district court to properly exercise

its discretion and decide pendent a state law claim once the federal claim is dismissed before trial"). Here, the Court is not convinced that those "overwhelming interests" exist.

Furthermore, Barrett will not be barred by the statute of limitations from raising the outrage claim in Kentucky's courts. "The period of limitations for any [supplemental state law claim] . . . after the dismissal of the [supplemental state law claim] shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). In other words, Barrett will have at least thirty days in which to file her state law claims in state court without fear of running afoul of the relevant statute of limitations.

## IV.

Accordingly, and for the reasons above, it is hereby **ORDERED** as follows:

1. The defendants' motion for summary judgment [R. 72] with respect to Barrett's 42 U.S.C. § 1983 claim is **GRANTED**;

2. The plaintiff's 42 U.S.C. § 1983 claim is **DISMISSED WITH PREJUDICE**;

3. The plaintiff's motion [R. 75] for partial summary judgment is **DENIED**;

4. The plaintiff's state law claim of outrage is **DISMISSED WITHOUT PREJUDICE**;

5. The pre-trial conference and jury trial in this matter are **CANCELLED**;

6. A separate judgment consistent with this Order shall be entered contemporaneously herewith; and

7. This is a **FINAL** Order.

This, the 30th of August, 2012.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge